1 │ NOSSAMAN LLP
  │ THOMAS D. LONG, (SBN 105987)
2 │ tlong@nossaman.com
  │ SCOTT N. YAMAGUCHI (SBN 157472)
3 │ syamaguchi@nossaman.com
  │ DAVID GRAELER (SBN 197836)
4 │ dgraeler@nossaman.com
  │ 445 S. Figueroa Street, 31st Floor
5 │ Los Angeles, California  90071
  │ Telephone:  213.612.7800
6 │
  │ Attorneys for Plaintiff, INDYMAC MBS, Inc,
7 │ a Delaware corporation
8 │

9 │            **UNITED STATES DISTRICT COURT**

10│            **CENTRAL DISTRICT OF CALIFORNIA**

11│

12│ In re                          │ Case Nos.: CV 11-02950-RGK
13│                                │           CV 11-02998-RGK
  │ INDYMAC BANCORP, INC., a       │
14│ Delaware corporation,          │ Adv. Proc. No.: 2:11-cv-02998-RGK
15│            Debtor.             │ **PLAINTIFF'S CONSOLIDATED**
  │                                │ **OPPOSITION TO MOTIONS OF**
16│                                │ **CERTAIN INSURERS TO DISMISS**
  │                                │ **PLAINTIFF'S COMPLAINT**
17│ INDYMAC MBS, INC., a Delaware  │
  │ corporation,                   │
18│                                │ DATE:  July 25, 2011
  │            Plaintiff,          │ TIME:  9:00 a.m.
19│                                │ DEPT:  850 (Judge Klausner)
  │ v.                             │
20│                                │
  │ ACE AMERICAN INSURANCE         │
21│ COMPANY, et al.                │
22│                                │
  │            Defendants.         │
23│                                │
24│
25│
26│
27│
28│

408432.1_DOC

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT...........................1

     A.   The Parties, Including IndyMac MBS, Are Competing For The Same D&O Insurance Proceeds, By Disputing Which Policy Years Are Triggered By Which Claims, And Which Claims Are Actually Covered. ...............................................1

     B.   The Side C Coverage of IndyMac MBS Can Only Be Determined By First Determining the Side A and Side B Coverages Of The Other Insureds. ..........................3

     C.   The Stakes Of IndyMac MBS Are Only Growing With The Passage Of Time And The Erosion Of Policy Limits. .......................................................4

     D.   A Number Of Parties Acknowledge The Stakes In This Coverage Dispute, Which Can Be Adjudicated Most Comprehensively In This Action. ................................5

     E.   This Action Is Ripe Regardless Of Exhaustion Of The IndyMac MBS Deductible Or The Policies Underneath The Excess Policy Of National Union, Because The Need For A Comprehensive Adjudication Of Coverage Remains Acute. ........................7

II.  THE COMPLAINT STATES AN ACTUAL CASE OR CONTROVERSY...........................................9

     A.   Actual Controversies Exist As To, and Within, Both Policy Years. ................................................... 10

     B.   An Actual Controversy Exists Among IndyMac MBS And The Other Policyholders and Insured -- Including The Side A Insurers. .......................... 11

**PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS OF CERTAIN INSURERS TO DISMISS**

C.     IndyMac MBS Is Not Required To Establish Exhaustion Of Its Deductible Or Underlying Policy Limits In Order To Be Entitled To Declaratory Relief. ........ 13

D.     Alternatively, IndyMac MBS Can Plead, And Has Adequately Pleaded, Exhaustion........................................ 18

III.     AT MINIMUM, INDYMAC MBS SHOULD BE GRANTED LEAVE TO AMEND, AND AT WORST, THIS ACTION CAN ONLY BE REMANDED BACK TO STATE COURT, NOT DISMISSED……………………….....19

IV.     CONCLUSION………………………………………………….......20

**PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS OF CERTAIN INSURERS TO DISMISS**

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth* (1937)
    300 U.S. 227 ...................................................................... 10

*Aerojet General Corp. v. Transport Indemnity Co.*
    17 Cal.4th 38 (1997)........................................................... 18

*Armstrong World Industries, Inc. v. Aetna Cas. & Sur. Co.*
    45 Cal.App.4th 1(1996) ..................................................... 18

*FMC Corp. v. Plaisted & Cos.*
    61 Cal.App.4th 1132 (1998) ........................................17, 18

*Fremont Indemnity Company, Inc. v. California National Physicians Insurance Co.*
    954 F.Supp. 1399 (C.D. Cal 1997) ................................12, 17

*In T.H.E. Insurance Co. vs. Dowdy's Amusement Park, Inc.*
    820 F.Supp. 238 (E.D.N.C. 1993)....................................... 14

*Iolab Corp. v. Seaboard Surety Co.*
    15 F.3d 1500 (9th Cir. 1994) .............................................. 15

*Laguna Pub. Co. v. Employers Reinsurance Corp.*
    617 F. Supp. 271 (C.D. Cal. 1985) ..................................... 12

*Lockheed Corp. v. Continental Ins. Co.*
    134 Cal.App.4th 187 (2005) ............................................... 16

*Ludgate Ins. Co. v. Lockheed Martin Corp.*
    82 Cal.App.4th 592 (2000) ................................................. 16

*Montrose Chemical Corp. of California v. Admiral Ins. Co.*
    10 Cal.4th 645 (1995)......................................................... 18

*Morongo Band of Mission Indians v. Rose*
    893 F.2d 1074, 1079 (9th Cir. 1990).................................. 19

*Northrop Corp. v. American Motorists Ins. Co.*
    220 Cal.App.3d 1553 (1990) .............................................. 18

**PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS OF CERTAIN INSURERS TO DISMISS**

*PMI Mortgage Ins. Co. v. American International Specialty Lines Ins. Co.*
    394 F.3d 761 (9th Cir. 2005) ................................................................ 18

*Schwartz v. State Farm Fire & Cas. Co.*
    88 Cal.App.4th 1329 (2001) ................................................................ 17

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*
    12 Cal.App.4th 715 (1993) ................................................................ 18

*St. Clair v. Chico*
    880 F.2d 199  (9th Cir. 1989) ................................................................ 20

*The Flintkote Co. v. General Accident Assur. Co. of Canada*
    410 F.Supp.2d 875 (N.D. Cal. 2006) ................................................................ 18

**Statutes**

28 U.S.C. § 1447(c)................................................................ 20

28 U.S.C. §2201................................................................ 15

1   **I.    INTRODUCTION AND SUMMARY OF ARGUMENT.**

2       The collapse of IndyMac Bank on July 11, 2008, one of the largest bank

3   failures in U.S. history, has spawned at least 14 underlying lawsuits that are

4   competing with each other to collect from a limited (and rapidly decreasing)

5   amount of directors' and officers' ("D&O") insurance.  (The 14 lawsuits include

6   two new lawsuits commenced on June 20, 2011, after the filing of the first

7   amended complaint in this action which currently references only the earlier 12

8   lawsuits.)  First Amended Compl. ("Compl.") ¶¶ 56-83.  The potential exposure

9   from these claims greatly exceeds the total available D&O insurance limits.

10   Coverage is disputed between the insurers and the insureds, making it

11   impossible to settle underlying claims and coverage claims due to coverage

12   uncertainties.    This coverage action seeks to resolve this entire insurance

13   coverage controversy, in a comprehensive, consistent, and cost-efficient manner,

14   by including all lawsuits competing for the same D&O coverage and all insurers

15   and insureds for the same D&O coverage.

16       From the start, it is incongruous for the insurers to categorically deny any

17   actual case or controversy whatsoever, where IndyMac MBS contends that the

18   claims against it are covered, and the insurers do not dispute that they have not

19   acknowledged any coverage for IndyMac MBS.  Compl. ¶¶ 1, 88-90.

20       **A.    The Parties, Including IndyMac MBS, Are Competing For The**

21             **Same D&O Insurance Proceeds, By Disputing Which Policy**

22             **Years Are Triggered By Which Claims, And Which Claims Are**

23             **Actually Covered.**

24       IndyMac MBS, an insured, has a general stake in the entire coverage

25   controversy, because of the rivalry between the competing claims for access to

26   limited and rapidly decreasing insurance proceeds.  The insurers fail to address

27   this rivalry and IndyMac MBS' concrete stake in it.  This controversy has thwarted

28

405549

global settlement discussions involving the underlying lawsuits and all of the parties to this action. This free-for-all cries out for declaratory relief.

One critical dispute of the parties, including IndyMac MBS, is which of two policy years has been triggered by each of the 14 underlying lawsuits. (Compl. ¶ 5.) This necessarily requires an adjudication of both policy years: to conclude that one claim is assigned to one policy year is to conclude that it should not be assigned to the other policy year.

Some, like IndyMac MBS, contend that the underlying lawsuits have triggered two policy years in the face amount of $80 million each (the "First Tower" in 2007-2008, and the "Second Tower" in 2008-2009), for a total of $160 million in D&O insurance -- with some lawsuits assignable to the First Tower, and one or more of the others assignable to the Second Tower. Compl. ¶¶ 5, 51, 91. This would increase the potential insurance funds available for paying settlements or judgments -- including for IndyMac MBS, which therefore has a stake in this dispute.

But other parties, most notably the insurers who are moving to dismiss this action, contend that only a single policy year of $80 million of D&O insurance (the First Tower in 2007-2008) is available for all lawsuits. Compl. ¶¶ 5, 51, 86. This would decrease the potential funds available, including for IndyMac MBS. This is at least an $80 million dispute for the parties, with diametrically opposed positions on whether the Second Tower in 2008-2009 is in play. Thus, IndyMac MBS has a stake in this dispute regarding both policy years, even if the underlying lawsuits against IndyMac MBS will ultimately be assigned to only one year or the other.

Next, after each claim is assigned to a policy year, IndyMac MBS has a stake in the determination of whether each claim is actually covered. IndyMac MBS contends that the lawsuits against it are covered -- while many of the other

408432.1_DOC

2

competing lawsuits against other insureds are not covered. Compl. ¶¶ 90, 92. A determination to this effect would increase the potential funds (i.e., the stake) available for IndyMac MBS. Conversely, if other insureds argue in favor of their own coverages and against the coverage of IndyMac MBS, a determination to that effect would reduce potential funds for IndyMac MBS. The insurers, who have reserved their rights to contest coverage for many or all of the claims, are disputing coverage too. Compl. ¶ 5.

This is a zero-sum controversy in which IndyMac MBS necessarily has a stake in the coverage disputes involving other competing lawsuits, insureds, insurers, policies, and policy years. The coverage fortunes of IndyMac MBS will rise or fall according to the coverage of rival claims.

**B. The Side C Coverage of IndyMac MBS Can Only Be Determined By First Determining the Side A and Side B Coverages Of The Other Insureds.**

Indeed, IndyMac MBS has an even stronger stake in the entire coverage controversy because of its unique coverage posture. IndyMac MBS literally has only one way to obtain a complete adjudication of its coverage: by obtaining a comprehensive adjudication of the entire coverage dispute.

The other insureds argue that the "Side C" coverage of IndyMac MBS is subordinated to "priority of payment" provisions in the D&O policies in favor of the other insureds' "Side A" and "Side B" coverages (the other insureds have Side A coverage, except the bankruptcy trustee who has Side B coverage). For present purposes, IndyMac MBS acknowledges that the other insureds' arguments for the priority of Side A and Side B over Side C will likely prevail.

If IndyMac MBS' coverage has the lowest priority, subordinate to all of the higher priority claims, then an adequate determination of IndyMac MBS' "residual" Side C coverage is literally impossible, without first determining the

rights of all other parties seeking Side A and Side B proceeds for both policy years.  The insurers fail to controvert this crucial point, and they fail to explain how IndyMac MBS can otherwise obtain a coverage determination.  Only by ignoring this point can the insurers argue, misleadingly, that IndyMac MBS has no independent stake in the Side A or Side B coverages of other insureds.  To the contrary, IndyMac MBS has a stake in the higher-priority Side A and Side B coverages of other insureds precisely because of this priority scheme that the insurers themselves wrote into their own policies.

### C.   The Stakes Of IndyMac MBS Are Only Growing With The Passage Of Time And The Erosion Of Policy Limits.

Unfortunately, the stake of IndyMac MBS is increasing due to the passage of time:  if anything, this dispute is becoming "overripe."  These D&O policies are "self-consuming" or "wasting" policies, i.e., the face amounts of their policy limits are already allegedly being steadily reduced by the insurers' purported payments of the ongoing and increasing amounts of defense costs incurred by the insureds in defending the underlying lawsuits, including but not limited to attorneys' fees.  The underlying lawsuits are amazingly expensive to defend, with a high "burn rate."  At least some of the insurers allege that nearly $30 million out of $80 million has already been spent on allegedly appropriate defense costs in the underlying lawsuits, which supposedly reduces the available policy limits to about $50 million (and falling) in the First Tower, which is where the insurers want to assign all of the underlying claims.  Meanwhile, none of the defense costs of IndyMac MBS are being paid by the insurers, and the available funds for the defense costs of IndyMac MBS are disappearing.

These defense payments are literally "eating up" insurance proceeds that would be better used for indemnity payments for settlements or judgments of the insureds, including IndyMac MBS.  Determining whether the available proceeds,

for both defense costs and indemnity payments, are only $50 million in the First Tower (as the insurers contend) or whether it is $130 million or more, including $80 million from the Second Tower (as IndyMac MBS and some others contend) is essential for the parties to know in order to settle and resolve the underlying claims.   In light of the rapid depletion of the insurance proceeds, settlements obviously need to be reached sooner rather than later -- but the parties and their mediator would need the guidance of timely coverage adjudications in this action.

In a further twist, the stakes are heightened even more because IndyMac MBS and the insurers are disputing whether all of the payments of defense costs are truly covered -- if not, such payments should not reduce any policy limits. Defense payments are only being "advanced" by the insurers, subject to later coverage determinations.  If IndyMac MBS is correct in its contentions, the rapid depletion of insurance proceeds can be mitigated to some extent, to the benefit of IndyMac MBS.  Specifically, IndyMac MBS alleges that many of those claims are not covered at all, in any policy year, for the very reasons that the insurers themselves have asserted in their reservation of rights letters.

IndyMac MBS has alleged that at least one significant claim, *FDIC v. Van Dellen*, for which significant defense costs are being paid under the 2007-2008 policy year, should instead be assigned entirely to the 2008-2009 policy year. Improper defense payments in the 2007-2008 policy year that should have been charged to the 2008-2009 policy year are further impairing the ability of IndyMac MBS to defend and settle the claims against it under the First Tower.

**D.    A Number Of Parties Acknowledge The Stakes In This Coverage Dispute, Which Can Be Adjudicated Most Comprehensively In This Action.**

The existence of an actual controversy, and the high stakes in this multi-faceted dispute as outlined above, are underscored by the fact that other parties

have recently filed two other insurance coverage actions that are currently pending, in addition to this action.   One coverage action was filed by the bankruptcy trustee for IndyMac Bancorp, the holding company for IndyMac Bank. Compl. ¶¶ 13, 66-68.   To correct the record, it was IndyMac Bancorp that filed bankruptcy on July 31, 2008, not IndyMac MBS, contrary to the misstatements of the Side ABC Insurers (Dkt. 28, Motion at 1:17-18) and National Union (Dkt. 36, Motion at 7:18-19).   The other coverage action was filed by the excess "Side A Only" insurers, whose Side A coverage is excess of the $40 million in policy limits of the underlying policies below them.   The individual insureds have not filed, and perhaps cannot afford to file, coverage actions on behalf of themselves, but they are filing answers in this action, each of which constitutes a vote in favor of adjudicating this actual controversy.

The bankruptcy trustee filed his coverage action as an adversary proceeding in the bankruptcy court entitled *Alfred H. Siegel v. Certain Underwriters of Lloyds of London, et al.*, for which the reference to bankruptcy court was subsequently withdrawn to the District Court (the "Trustee's Coverage Action").   However, unlike this comprehensive coverage action, the Trustee's Coverage Action seeks adjudication of coverage only with respect to the trustee's own underlying adversary proceeding against certain insured directors and officers, which is just one of the 14 underlying lawsuits -- and the Trustee's Coverage Action fails to seek any coverage determinations as to any of the other underlying lawsuits.

The Side A Only insurers originally filed a coverage action in State Court, but they voluntarily dismissed it.   They refiled in federal court in *XL Specialty Insurance Co., et al. v. Michael Perry, et al.*, U.S. District Court for the Central District of California, Case No. CV11-02078-GHK (JCGx) (the "Side A Only Coverage Action").   Thus, the Side A Only insurers are on record, in this Court,

**PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS OF CERTAIN INSURERS TO DISMISS**

as contending that an actual controversy exists, and they cannot contend otherwise now.  However, unlike this comprehensive coverage action by IndyMac MBS, the Side A Only Coverage Action names some (but not all) of the insured directors and officers who are named as defendants, in some (but not all) of the underlying lawsuits -- while selectively leaving out IndyMac MBS, even though it is also an insured defendant in one of the underlying lawsuits included in the Side A Only Coverage Action.

Ironically, in arguing for dismissal of the Trustee's Coverage Action, the "Side ABC" primary insurers actually praise this action, by advising this Court that the existence of "more comprehensive coverage actions . . . counsels strongly against exercising jurisdiction" over the Trustee's Coverage Action, which -- unlike this action -- "does not name all of the interested parties and is limited to a determination of coverage for only one of several underlying lawsuits and demands."  (Memorandum of Points and Authorities by ABC Insurers in Support of Motion to Dismiss Trustee's Coverage Action at 25:10-25.)  More ironically, this deficiency is also true with respect to the Side A Only Coverage Action, which also fails to address all of the underlying lawsuits and insureds.

**E.   This Action Is Ripe Regardless Of Exhaustion Of The IndyMac MBS Deductible Or The Policies Underneath The Excess Policy Of National Union, Because The Need For A Comprehensive Adjudication Of Coverage Remains Acute.**

The insurers allege that this action is not ripe because of the $2.5 million deductible that IndyMac MBS must exhaust for insurance coverage, even though IndyMac MBS has demonstrated real stakes in this dispute.  National Union specifically alleges that this action is not ripe with respect to its excess coverage in excess of $30 million in underlying policy limits, Compl. ¶ 52, which remain unexhausted.  But none of the insurers bother to explain how the Side A Only

Coverage Action could be ripe under their analysis, where the Side A excess insurers are providing insurance in excess of $40 million which remains unexhausted.

If this action is not ripe, then none of the coverage actions are ripe, which would leave the parties in eternal darkness with no means to resolve the coverage disputes that are thwarting settlements of underlying lawsuits.  As explained below, exhaustion is not required in this action for declaratory relief, and even if necessary, IndyMac MBS could show exhaustion anyway.

The stark choice for this Court is between a comprehensive, cost-efficient coverage adjudication as sought by IndyMac MBS, or the utter anarchy of fragmented, inconsistent resolutions proposed by others.  If this controversy is, as the insurers urge, to be fragmented into individual disputes between each policyholder who would deal separately and consecutively with each insurer, as each successive policy in the First Tower and/or Second Tower is exhausted step-by-step over time, this controversy will be settled or resolved in a piecemeal and perhaps inconsistent manner, and will needlessly exhaust scarce judicial resources.

In one example of a real risk of inconsistency that exists now, if the Side A Only Coverage Action results in the requested adjudication that the underlying lawsuits trigger only a single policy year, the First Tower in 2007-2008, that could conflict with the requested adjudication in the Trustee's Coverage Action, that the trustee's underlying claim triggers the Second Tower in 2008-2009 instead. Even more confusingly, because many parties and claims are omitted from the Side A Only Coverage Action and the Trustee's Coverage Action, those parties would not be bound by those adjudications, and they could commence new coverage lawsuits and urge further inconsistent results.

1      The viability of this coverage action for declaratory relief is supported by
2 equity and fairness, as well as law.  Even though the insurers complain about
3 their perceived litigation burdens, they received significant premium payments on
4 behalf of the insureds (over $1.7 million for 2007-2008, Compl. ¶ 52, and over $6
5 million for 2008-2009, Compl. ¶ 53), for their promise to protect the insureds,
6 including IndyMac MBS, from claims, and to give them peace of mind.  Through
7 their motions to dismiss, the insurers are trying to thwart a comprehensive
8 coverage adjudication and to divide and conquer the insureds, many or whom
9 have limited resources to fight the insurers to maximize their rights to coverage.

10 **II.  THE COMPLAINT STATES AN ACTUAL CASE OR CONTROVERSY.**

11      The three sets of moving parties, the "Side A", "Side ABC," and National
12 Union Insurers, argue that this action should be dismissed for lack of a case or
13 controversy under the Constitution, Article III, section 2.  Ironically, the insurers
14 insist that IndyMac MBS bears the burden of establishing an actual case or
15 controversy because of its purported "invocation of Federal court jurisdiction"
16 (Side ABC motion at 3:17), even though IndyMac MBS was in no way
17 responsible for bringing this action to federal court.

18      To set the record straight, IndyMac MBS originally filed this action in State
19 Court.  This action was then removed to Bankruptcy Court by parties other than
20 IndyMac MBS, Compl. ¶¶ 8-9, and this Court subsequently withdrew the
21 reference to Bankruptcy Court.  Thus, it is misleading to say that this action is
22 pending in this Court because IndyMac MBS "invoked" federal jurisdiction.  If the
23 current complaint is deemed as not adequately alleging federal jurisdiction,
24 IndyMac MBS should be given leave to amend, and at the very worst, this action
25 should be remanded to State Court and not dismissed.  But IndyMac MBS
26 demonstrates below that this Court should retain jurisdiction over the existing
27 complaint because an actual case or controversy exists.

28

Article 3, section 2 of the Constitution allows the federal courts to decide only cases of actual controversy. This requirement is incorporated into the Declaratory Judgment Act, 28 U.S.C.A. § 2201(a). *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth* (1937) 300 U.S. 227, 239-40. The Supreme Court long ago established the classic description of this requirement:

> "A 'controversy' in this sense must be one that is appropriate for judicial determination. . . . A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. . . . Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. . . . And as it not essential to the exercise of judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required."

*Aetna Life Ins. Co.,* 300 US at 240-41 (citations omitted).

## A.   <u>Actual Controversies Exist As To, and Within, Both Policy Years.</u>

As outlined above, IndyMac MBS has alleged an actual controversy as to whether only the First Tower, the 2007-2008 policy year, applies, or whether the

Second Tower, the 2008-2009 policy year, has also been triggered by one or more of the underlying lawsuits.

It is simplistic -- and wrong -- to argue that IndyMac MBS' only interest is in the First Tower, where it contends it belongs, with respect to the older three underlying lawsuits against it. As noted above, other parties may argue to the contrary. Indeed, as to the Side ABC insurers, IndyMac MBS is an actual policyholder in the Second Tower as well. Because IndyMac MBS only has Side C coverage, which has the lowest priority of payment relative to Side A and Side B, IndyMac MBS cannot get an effective declaration of its coverage rights in whichever policy year, without an adjudication of coverage and placement by policy year of all claims, and this makes it impossible to avoid litigating coverage issues for all claims in both the First Tower and the Second Tower. As also noted above, the coverage dispute includes the extent to which the policy limits have eroded due to the insurers' payments of defense costs for claims that may not be covered, or defense costs for one or more claims that are not being assigned to the correct policy year.

IndyMac MBS has stated a single controversy between it and its insurers. In order for IndMac MBS to obtain complete relief, all other claims must be adjudicated, given the competing claims for the same D&O proceeds, and the lower-priority Side C coverage of IndyMac MBS which is subordinate to the Side A and Side B coverages of the other insureds. To avoid a multiplicity of actions and to avoid leaving out necessary or indispensible parties whose rights could be impaired, all parties must be included in this action.

**B.**   **An Actual Controversy Exists Among IndyMac MBS And The Other Policyholders and Insured -- Including The Side A Insurers.**

Next, the Side A Only insurers argue that there cannot be a case or controversy involving IndyMac MBS and them because IndyMac MBS, a Side C policyholder, is not a policyholder under their Side A policies. The Side A insurers explain that a "person who is not an insured under a policy has no standing to sue for breach of contract" (IndyMac MBS is suing for declaratory relief, not breach of contract). (Side A motion at 8:16-17.) The Side A insurers further explain that IndyMac MBS "cannot escape the simple fact that the Side A insurers' duties float to their insureds alone." (*Id.* at 9:8-10.)

The Side A Only insurers' argument fails from the start because IndyMac MBS is not suing the Side A Only insurers for an adjudication of breach of contract and money damages. Rather, as outlined above, this action seeks declaratory relief on all of the parties' rights and obligations, in order to determine the policy year placement, coverage, and available policy limits for IndyMac MBS' lower-priority Side C coverage, which is subordinate to the Side A and Side B coverages. It is undisputed that IndyMac MBS is not a policyholder under the Side A Only policies -- but a case or controversy exists involving IndyMac MBS and the Side A insurers, given the unique posture of IndyMac MBS with its Side C coverage which is subordinated to the Side A and Side B coverages. None of the cases cited by the insurers, including *Laguna Pub. Co. v. Employers Reinsurance Corp.*, 617 F. Supp. 271 (C.D. Cal. 1985), and none of their arguments, address the facts in this case at all.

In *Fremont Indemnity Company, Inc. v. California National Physicians Insurance Co.*, 954 F. Supp. 1399 (C.D. Cal 1997), the court found an actual controversy permitting declaratory relief to allow one insurer to sue another insurer to determine which of them was obligated to respond to the policyholder's claim -- even though the insurers had no contractual relationship with each other. The policyholder was a Dr. Gumm. Fremont provided 1991-1992 coverage, and

408432.1_DOC

12

CMP provided 1992-1994 coverage.   Both were claims-made policies.   Dr. Gumm received notices of intent to file lawsuits during the Fremont policy period, and before the CMP policy period, and ultimately Dr. Gumm was sued during the CMP policy period.   CMP elected to defend Dr. Gumm, but contended that it was Fremont who owed the duty to defend.   Fremont subsequently assumed the defense of Dr. Gumm.   Fremont then filed a declaratory relief action against CMP, arguing that CMP had to contribute to defense costs.   Although Fremont had no contractual relationship with CMP, but the court easily found that "an actual controversy exists between the parties making declaratory relief appropriate."   *Id*. at 1401.

In this action, a controversy similarly exists that requires a determination of whether there is one policy year or two policy years of D&O insurance available to respond to at least 12 lawsuits competing with each other for the same D&O insurance proceeds.   This determination will necessarily assign each of those lawsuits to the appropriate policy year.   All of these issues must be decided in order for IndyMac MBS to obtain full and complete declaratory relief on its claim for the lower priority Side C coverage in one policy year or the other.

C.   **IndyMac MBS Is Not Required To Establish Exhaustion Of Its Deductible Or Underlying Policy Limits In Order To Be Entitled To Declaratory Relief.**

The Side ABC insurers also argue that IndyMac MBS has not alleged a case or controversy because it has suffered no injury in fact, even as to the 2007-2008 policies.   Taken to its extreme, the insurers seem to be arguing that IndyMac MBS must first allege payment of its $2.5 million deductible before it can commence suit against the insurers.   National Union contends that exhaustion of $30 million in coverage underlying its policy must be exhausted before it can be sued (even though the insurers allege that nearly $30 million have already been

1    paid).   In any event, these arguments would render the Declaratory Judgment

2    Act meaningless.

3       Once IndyMac MBS has exhausted its deductible through payments, the

4    failure of its insurers to defend it is no longer an appropriate case for declaratory

5    relief, rather it is a case for breach of contract.   Defense or indemnity payments

6    already made by IndyMac MBS would be the subject of a breach of contract

7    action and declaratory relief would be unnecessary because there would be an

8    adequate alternative remedy.   In essence, the insurers are really arguing that

9    IndyMac MBS will never be able to bring a coverage action for declaratory relief.

10       In other cases, the assertion of mere underlying claims prior to lawsuits --

11    i.e., well prior to any exhaustion -- have been held sufficient to give rise to an

12    actual case or controversy.   In *T.H.E. Insurance Co. vs. Dowdy's Amusement*

13    *Park,* 820 F.Supp. 238 (E.D.N.C. 1993), claimants were injured while riding in a

14    go-cart at the policyholder's amusement park.   No lawsuit had been brought

15    against the amusement park.   The injured parties simply had given notice of their

16    intent to proceed with a claim.   The insurance carrier, T.H.E. filed a declaratory

17    judgment action after receiving the notice letter seeking a declaration that

18    coverage would be unavailable for any lawsuit for either the duty to defend or the

19    duty to indemnify because of various policy exclusions and the policyholder's

20    failure to give prompt notice.   The court held that there was a sufficient allegation

21    of an actual case or controversy even though no lawsuit had yet been filed.

22      "It is much more sensible to permit resolution of coverage

23      issues when the dispute first arises than to require all parties to

24

25      endure unnecessary uncertainty and expense until a third party

26      complaint has been filed.   Where a settlement demand has

27      been made, the presence or absence of coverage is critical for

28

408432.1_DOC

14

all parties in determining how to proceed and a disputed coverage issue is a sufficiently live controversy to make exercising jurisdiction appropriate under 28 U.S.C. §2201 (the Declaratory Judgments Act)."

820 F.Supp. at 240.

Here lawsuits have been filed.  In some cases demands for payments of claims have been made based upon those lawsuits.  In any event, the collective damages sought by all of the lawsuits far exceed the amount of insurance coverage available.  It makes no sense for the litigants in twelve lawsuits (and two additional ones filed since the time of IndyMac MBS's first amended complaint) to continue litigating their underlying lawsuits when the presence or absence of insurance coverage, the amount of coverage and the allocation of coverage among those lawsuits remains uncertain and can only be comprehensively decided through IndyMac MBS' coverage action.

The insurers utterly misplace their reliance upon *Iolab Corp. v. Seaboard Surety Co.*, 15 F.3d 1500 (9th Cir. 1994), in support of their argument that IndyMac MBS must first show exhaustion of its deductible (or the underlying policy limits beneath National Union's excess policy) before it can seek declaratory relief.  For several reasons, *Iolab* does not help the insurers.

•     *Iolab* only held that a coverage action for breach of contract did not establish any actual controversy with respect to excess insurers, where it was uncontroverted that the amount of the insured's loss would not exhaust the primary coverage limit.  The insured's claim was for $14.5 million, but there was $35 million available in primary coverage.  As explained in the next section below, *Iolab* is distinguishable, because IndyMac MBS can adequately allege

408432.1_DOC

exhaustion of both the $2.5 million deductible of the Side ABC policies and the primary coverages underneath National Union's excess coverage.  However, for the following additional and independent reasons, *Iolab* is simply inapplicable, and it would not matter even if IndyMac MBS could not allege exhaustion.

- • *Iolab* was a case involving non-exhaustion of primary coverage, as opposed to a deductible -- and the Side ABC insurers cite no case that holds that the *Iolab* rationale applies in the context of a deductible.

- • This is solely a declaratory relief action to determine the parties' rights and obligations -- not a breach of contract action for money damages, as in *Iolab*.  It should be noted that in *Iolab*, the insured had never even pleaded any claim for declaratory relief.  Nor did the insured ever ask the district court to treat the action as one for declaratory relief.  Rather, the insured belatedly argued on appeal that the district court itself should have known to recharacterize the action as one for declaratory relief.  Unsurprisingly, *Iolab* merely held that the district court did not abuse its discretion in not doing so.  *Iolab* did not address whether declaratory relief would have been proper if the insured had actually pleaded it.

- • Because *Iolab* held that the insured had no primary coverage, it necessarily followed that no excess coverage could exist either.  15 F.3d at 1505 n. 2.  Thus, the excess coverage was unavailable in any scenario, regardless of the non-exhaustion of the primary coverage.  The exhaustion rationale was unnecessary to the *Iolab* decision, and in effect, it was merely dicta.

- • The non-exhaustion rationale of *Iolab* was expressly based on its interpretation of California case law, 15 F.3d at 1504-05 -- which has evolved since *Iolab* was decided in 1994.  In *Ludgate Ins. Co. v. Lockheed Martin Corp.*, 82 Cal.App.4th 592, 606 (2000), the Court of Appeal emphatically rejected the argument that "a reasonable probability of exhaustion of the primary coverage" is a prerequisite to a declaratory relief action against excess insurers.  Thus, in

*Fremont Reorganizing Corp. v. Federal Ins. Co.*, 2010 WL 444718 (C.D. Cal. 2010), the district court correctly departed from *Iolab* and followed *Ludgate*, noting that a federal appellate interpretation of state law is only binding to the extent that state law has not changed since the federal decision.

- In *Schwartz v. State Farm Fire & Cas. Co.*, 88 Cal.App.4th 1329, 1336-38 (2001), the court held that the duties owed by excess insurers to their insureds (including IndyMac MBS), under the implied covenant of good faith and fair dealing, are in effect from the very inception of the policy -- not some later time when policy benefits become payable. Specifically, *Schwartz* held that an excess insurer's duty to reasonably settle claims can arise before any benefits may actually be due under the excess insurance policy. Likewise, in this case, even if no benefits may be due to IndyMac MBS yet under the policies, all insurers of IndyMac MBS still owe live, ongoing duties to it in connection with settling claims -- but in order to settle claims, the parties need a judicial declaration of their rights and obligations. *Iolab* does not address this issue which is critical in this case.

- *Iolab* relied on a purported California policy of protecting excess insurers from avoidable litigation costs. As shown above, *Iolab* does not apply to this case on several levels. In any event, such a policy of cost-efficiency would be much better served by allowing this comprehensive action to proceed as it would be far more cost-efficient for all parties, compared to avoidable, excessive litigation costs from piecemeal, inconsistent adjudications.

- California case law is replete with examples of complex, comprehensive insurance coverage actions involving a large cast of primary insurers, sometimes over decades, and numerous excess insurers -- utterly belying *Iolab's* suggestion that California law does not accommodate such comprehensive actions. *FMC Corp. v. Plaisted & Cos.*, 61 Cal.App.4th 1132,

1143 (1998); *Aerojet General Corp. v. Transport Indemnity Co.*, 17 Cal.4th 38, 69-70 (1997); *Armstrong World Industries, Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal.App.4th 1, 107-109 (1996); *Montrose Chemical Corp. of California v. Admiral Ins. Co.*, 10 Cal.4th 645 (1995); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 770 (1993); *Northrop Corp. v. American Motorists Ins. Co.*, 220 Cal.App.3d 1553 (1990). Indeed, there are even examples in federal case law in California. *PMI Mortgage Ins. Co. v. American International Specialty Lines Ins. Co.*, 394 F.3d 761 (9th Cir. 2005); *The Flintkote Co. v. General Accident Assur. Co. of Canada*, 410 F.Supp.2d 875 (N.D. Cal. 2006).

## D. Alternatively, IndyMac MBS Can Plead, And Has Adequately Pleaded, Exhaustion.

*Iolab* is also distinguishable because the insured in *Iolab* could not demonstrate exhaustion of primary coverage, while IndyMac MBS can demonstrate exhaustion and thereby avoid the specific holding in *Iolab*.

The rules of pleading liberally allow IndyMac MBS to allege exhaustion generally, rather than specifically: FRCP 9(c) states: "In pleading the performance of occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred." Thus, IndyMac MBS generally alleges exhaustion.

IndyMac MBS can demonstrate exhaustion more specifically as well. The three lawsuits against IndyMac MBS, the MBS litigation, Compl. ¶¶ 69-73, Exhs. X and Y, the FHLB Chicago litigation, Compl. ¶ 78, Exh. BB, and the FHLB Indianapolis litigation, Compl. ¶ 79, Exh. CC, make allegations about literally billions of dollars of transactions from which one can reasonably infer that damages are being sought against IndyMac MBS in excess of the deductible. The losses claimed by the plaintiffs suing IndyMac MBS must be coupled with

the defense costs IndyMac MBS is likely to incur (already $500,000 and rising) if these vigorously litigated cases go to trial.

Significantly, two additional lawsuits have recently been filed against IndyMac MBS:  *National Credit Union Administration Board v. RBS Securities, Inc.*, case no. 2:11-cv-02340-RDR-KGS, filed on June 20, 2011, in the U.S. District Court for the District of Kansas ("NCUA 1") (Plaintiff's Request for Judicial Notice ["RJN"], Exh. A), and *National Credit Union Administration Board v. J.P. Morgan Securities LLC,* case no. 2:11-cv-02341-EFM-JPO, filed on June 20, 2011, in the U.S. District Court for the District of Kansas ("NCUA 2") (Plaintiff's Request for Judicial Notice, Exh. B).  In NCUA 1, the complaint appears to allege damages in connection with MBS mortgage securities of more than $39 million (RJN, Exh. A, p. 39, bottom table at "month 12"), plus nearly $8 million (RJN, Exh. A, p. 40, top table at month 12).   In NCUA 2, the complaint appears to allege damages of more than $18 million (RJN, Exh. B, p. 37, top table, month 12).   These damage claims, from the two new lawsuits alone, constitute exhaustion.

This exposure to defense costs and liability is hardly "conjectural" or "hypothetical."   IndyMac MBS has been sued multiple times, and the likely defense costs alone exceed the deductible.  The damages alleged, and therefore the likely settlement demands, also dramatically exceed the deductible.

## III.   AT MINIMUM, INDYMAC MBS SHOULD BE GRANTED LEAVE TO AMEND, AND AT WORST, THIS ACTION CAN ONLY BE REMANDED BACK TO STATE COURT, NOT DISMISSED.

If this Court is inclined to grant the motions to dismiss, it should also grant leave to IndyMac MBS to file an amended complaint.  Leave to amend is to be freely and liberally given when granting a motion to dismiss. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Also, IndyMac

MBS is entitled to an opportunity to take discovery to obtain additional jurisdictional facts, before this Court finally adjudicates any disputes over the jurisdictional facts. *St. Clair v. Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

In any event, if and when this Court decides that this action cannot be maintained in this Court, the Court should remand this action back to State Court where it was commenced, and where this action is clearly justicible, as opposed to dismissing this action. The removal statute, 28 U.S.C. § 1447(c), expressly mandates remand if there is no subject matter jurisdiction.

## IV.    CONCLUSION.

For the reasons stated, IndyMac MBS respectfully requests that this Court DENY the motions to dismiss.

DATED: July 1, 2011

NOSSAMAN LLP
THOMAS D. LONG
SCOTT N. YAMAGUCHI
DAVID GRAELER


By:_____/s/ SCOTT N. YAMAGUCHI_____
              SCOTT N. YAMAGUCHI
Attorneys for Plaintiff, INDYMAC MBS, INC.,
a Delaware Corporation