DAVID SIMANTOB (S.B. #155790)
dsimantob@tresslerllp.com
ELIZABETH L. MUSSER (S.B. #203512)
emusser@tresslerllp.com
TRESSLER LLP
1901 Avenue of the Stars
Suite 450
Los Angeles, California  90067
Telephone:  (310) 203-4800
Facsimile:  (310) 203-4850

Attorneys for Those Certain Underwriters At Lloyd's, London and Lexington Insurance Company UK, Subscribing to Policy No. QA006807; Those Certain Underwriters At Lloyd's, London and Catlin Insurance Company (UK) Ltd., Subscribing to Policy No. QA011608; Twin City Fire Insurance Company; and Continental Casualty Company

(Additional counsel listed on next page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>INDYMAC BANCORP, INC.,<br><br>Debtor.<br><br>INDYMAC MBS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ACE AMERICAN INS. CO., a Pennsylvania corporation, et al.<br><br>Defendants. | Case Nos. 2:11-cv-2950-RGK and 2:11-cv-2998-RGK<br><br>**DEFENDANT ABC CARRIERS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Date:       July 25, 2011<br>Time:      9:00 a.m.<br>Judge:     Hon. R. Gary Klausner<br>Courtroom:   850 |

THEODORE A. BOUNDAS (*admitted pro hac vice*)
JEFFREY T. SHAW (*admitted pro hac vice*)
W. JOEL VANDER VLIET (*admitted pro hac vice*)
BOUNDAS, SKARZYNSKI, WALSH & BLACK, LLC
200 East Randolph Drive, Suite 7200
Chicago, Illinois 60601
Telephone: (312) 946-4200
Facsimile: (312) 946-4272

Attorneys for Those Certain Underwriters At Lloyd's, London and Lexington Insurance Company UK, Subscribing to Policy No. QA006807 and Those Certain Underwriters At Lloyd's, London and Catlin Insurance Company (UK) Ltd., Subscribing to Policy No. QA011608

BRIAN HARRISON (S.B. #157123)
ROBERT S. GEBHARD (S.B. #158125)
VEENA A. MITCHELL (S.B. #161153)
SEDGWICK LLP
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: 415-781-7900
Facsimile: 415-781-2635

Attorneys for Zurich American Insurance Co.

## I. **INTRODUCTION**

Glaringly absent from IndyMac MBS, Inc.'s ("IndyMac MBS") consolidated response to the carriers' motions to dismiss is any explanation of why it has an Article III stake in each of its claims. Rather, it generally asserts that its lawsuit provides the best vehicle to "resolve this entire insurance controversy . . . by including all lawsuits competing for the same D&O coverage and all insurers and insureds . . . ." Resp. at 1. IndyMac MBS misses the point entirely.

The ABC Defendants joining in this motion agree that a global resolution of all claims to insurance by all stakeholders, if possible, is the ideal and that it should occur in this Court.[1] The first step, however, is to identify the real stakeholders with standing to litigate the coverage issues. In a separate motion in the action filed by the bankruptcy trustee of IndyMac Bancorp, Inc. ("IndyMac Bancorp"), the ABC Defendants argue that the trustee's claims should be dismissed because he has no standing to obtain the coverage determinations he requests. Here, for different reasons based on the specific facts applicable to IndyMac MBS, the ABC Defendants request the same result—dismissal of the claims against them for lack of standing. It is axiomatic that litigants in a coverage dispute must have a real, imminent, and non-speculative interest in the outcome.

IndyMac MBS all but ignores the Article III Case or Controversy standards and makes no real effort to explain why it can legitimately invoke this Court's jurisdiction. A short recap of the law and the claims involved therefore is in order.

*First*, regarding the "irreducible constitutional minimum" of standing, the rules are well-settled. *See McConnell v. FEC,* 540 U.S. 93, 225 (2003), *overruled on other grounds in Citizens United v. FEC,* 130 S. Ct. 876, 896-914 (2010);

---

[1] The ABC Defendants here are: Those Certain Underwriters At Lloyd's, London and Lexington Insurance Company UK, Subscribing to Policy No. QA006807 and Those Certain Underwriters At Lloyds, London and Catlin Insurance Company (UK) Ltd., Subscribing to Policy No. QA011608; Twin City Fire Insurance Company; Continental Casualty Company; and Zurich American Insurance Company.

1

*Vermont Agency of Natural Resources v. U.S. ex rel. Stevens,* 529 U.S. 765, 771 (2000). The rule involved here is that "a plaintiff must demonstrate an 'injury in fact,' which is 'concrete,' 'distinct and palpable,' and 'actual or imminent.'" *McConnell,* 540 U.S. at 225 (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990)). Put another way, the necessary injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (citations omitted). "Particularized" means that "the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1; *accord Arizona Christian Sch. Tuition Org. v. Winn,* 131 S. Ct. 1436, 1443 (2011). And where the plaintiff relies on threatened future injury to supply standing, as IndyMac MBS does, the injury must be "real, immediate, and direct"—not "too remote temporally" or otherwise. *Davis v. FEC,* 554 U.S. 724, 734 (2008); *McConnell,* 540 U.S. at 226; *see Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167, 190 (2000) ("the threatened injury [must be] certainly impending").[2]

The plaintiff bears the burden to show that standing exists with respect to ***each claim individually***:

> "[S]tanding is not dispensed in gross." *Lewis v. Casey,* 518 U.S. 343, 358, n.6, 116 S. Ct. 2174, 135 L.Ed. 2d 606 (1996). Rather, "a plaintiff must demonstrate standing for each claim he seeks to press" and "'for each form of relief'" that is sought. *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006) (quoting *Friends of the Earth,* [528 U.S.] at 185, 120 S. Ct. 693).

*Davis,* 554 U.S. at 734; *see also Summers v. Earth Island Inst.,* 555 U.S. 488, 129 S. Ct. 1142, 1149 (2009) (plaintiff "bears the burden of showing that he has

---

[2] IndyMac MBS emphasizes that this lawsuit was originally filed in state court and then removed by the IndyMac Bancorp bankruptcy trustee (Resp. at 9), but this is irrelevant because it filed its Amended Complaint in federal bankruptcy court, and the same federal standing requirements apply to removed actions in any event. *See Lee v. American Nat'l Ins. Co.,* 260 F.3d 997, 1001-02 (9th Cir. 2001).

2

standing for each type of relief sought").

***Second,*** regarding the lawsuits naming IndyMac MBS for which it seeks insurance coverage, there were three at the time the lawsuit was commenced (even though IndyMac MBS' Amended Complaint seeks declarations regarding 12 matters).[3] Those actions are the following:

- The "MBS Litigation," which IndyMac MBS contends "may be covered under . . . the First Tower"—*i.e.,* the 2007-2008 policies. Ex. 1, FAC ¶¶ 73, 118.
- The "FHLB Chicago Litigation," which IndyMac MBS also contends "may be covered under . . . the First Tower." Ex. 1, FAC ¶¶ 78, 121.
- The "FHLB Indianapolis Litigation," which IndyMac MBS echoes "may be covered under . . . the First Tower." Ex. 1, FAC ¶ 79, 124.

The claims under the 2007-2008 policies are subject to a $2.5 million uninsured retention—coverage is not triggered until this retention is exhausted. *See* Ex. 1, FAC, Ex. A, Clause IV.A; *see also id.* Insuring Clause I.C. IndyMac MBS does not allege exhaustion of this retention even in a conclusory way, nor can it do so, as it admits (confirming the evidence attached to the ABC Defendants' opening memorandum) that the defense expenses incurred so far (in litigation pending since January 2009 (Ex. 1, FAC ¶ 69)) total only "$500,000 and rising." Resp. at 19.

Although it is not close to satisfying the retention for the 2007-2008 policies, and has not sought ***any*** coverage under the 2008-2009 policies, IndyMac MBS seeks sweeping declarations under both policy years. As shown below, notwithstanding its desire to mastermind a global resolution of all disputes under these policies, IndyMac MBS has no standing to participate in such a resolution.

---

[3] IndyMac MBS discusses two more claims in its response—for a total of 14. Those claims are addressed in Section II.B.

## II. ARGUMENT

### A. IndyMac MBS Has No Stake In The Coverage Under The 2008-2009 Policies.

IndyMac MBS, as shown in the ABC Defendants' opening memorandum (at 4-5), lacks standing to seek relief regarding the 2008-2009 policies because IndyMac MBS has no personal stake in the determinations it requests. *See Summers,* 129 S. Ct. at 1149; *see also Lujan,* 504 U.S. at 560 (plaintiff must show injury to "legally protected interest"); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472 (1982) (plaintiff must "'show that he personally has suffered some actual or threatened injury'") (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 (1979)).

IndyMac MBS lacks the required personal stake because it has not alleged that it has submitted a claim for coverage under the 2008-2009 policies or that any such claim is forthcoming. Nor does IndyMac MBS allege that any claim asserted against it is covered by the 2008-2009 policies (it asserts that a claim paid under the 2007-2008 policies should not have been paid under those policies (Resp. at 5) but that argument does not demonstrate any stake in the 2008-2009 policies). To the extent IndyMac MBS requests coverage determinations for lawsuits in which it has been named, as shown above, they do not implicate the 2008-2009 policies.

IndyMac MBS does not dispute any of these points, but it still states that it is entitled to a broad declaration of rights under the 2008-2009 policies, arguing:

> IndyMac MBS cannot get an effective declaration of its coverage rights in whichever policy year, without an adjudication of coverage and placement by policy year of all claims, and this makes it impossible to avoid litigating coverage issues for all claims in both the First Tower and the Second Tower.

Resp. at 11. IndyMac MBS repeats this *ipse dixit* several times, but tellingly, without explaining why determining coverage under the 2007-2008 policies

4

requires determining coverage under the 2008-2009 policies.

The policies are separate contracts governed by their own terms. IndyMac MBS seeks coverage only under the 2007-2008 policies. Thus, in its alleged capacity as an insured, IndyMac MBS has no legal interest in the determination of coverage for the claims made against other insureds under the 2008-2009 policies.[4]

### B. IndyMac MBS Has Suffered No Injury In Fact Under The 2007-2008 Policies.

IndyMac MBS, as shown in the ABC Defendants' opening memorandum (at 5-7), likewise has no standing to seek a declaration under the 2007-2008 policies because it has not suffered any injury in fact. Again, a plaintiff "must show that he is under threat of suffering 'injury in fact' that is concrete and particularized [and] actual and imminent, not conjectural or hypothetical." *Summers*, 129 S. Ct. at 1149; *see also Lujan,* 504 U.S. at 560 (plaintiff must show "actual or imminent" harm to a "legally protected interest"). A threatened injury must be "certainly impending"—not "too remote temporally" or otherwise. *Friends of the Earth,* 528 U.S. at 190; *Whitmore,* 495 U.S. at 158; *McConnell,* 540 U.S. at 226.

IndyMac MBS alleges no "actual or imminent" injury at the time this lawsuit was commenced. IndyMac MBS does not allege that a covered loss has occurred, that one is "certainly impending," or that there is any other circumstance that the law recognizes as conferring standing. To the contrary, as the policies attached to the Amended Complaint show, coverage under the 2007-2008 policies is not triggered until the $2.5 million retention is exhausted by actual payments of defense

---

[4] IndyMac MBS, which is in receivership with the FDIC (Ex. 1, FAC ¶¶ 13-14), appears to be using this lawsuit as a stalking horse—to seek a coverage ruling designed to benefit the FDIC *in its capacity as a plaintiff* in a lawsuit in which IndyMac MBS is not even involved. Indeed, at Page 5 of its response, IndyMac MBS states that "*FDIC v. Van Dellen,* for which significant defense costs are being paid under the 2007-2008 policy year, should instead be assigned entirely to the 2008-2009 policy year." IndyMac MBS has no interest in this determination as an insured. It has not been sued in *Van Dellen* and does not make any claim under the 2008-2009 policies. But IndyMac MBS seeks this ruling anyway, to try to increase the insurance pool available to plaintiff-FDIC, clearly an impermissible purpose.

or indemnity costs. *See* Ex. 1, FAC, Ex. A, Clause IV.A. (primary policy providing that a $2.5 million retention applies under Insuring Clause I.C.). IndyMac MBS has ***not*** alleged exhaustion of this retention or that exhaustion is imminent.

In fact, IndyMac MBS admits in its response that the retention is not close to exhaustion, confirming the ABC Defendants' showing in their opening memorandum that IndyMac MBS only "had incurred over $500,000" through November 2010. *See* Ex. 2 at 2. IndyMac MBS states that as of now, mid-July 2011, it still has only incurred expenses of "$500,000 and rising." Resp. at 19.[5] Given this slow burn rate (in litigation pending since January 2009 (Ex. 1, FAC ¶ 69)), exhaustion of the $2.5 million retention could take years, and may never occur depending on intervening circumstances (such as grants of dispositive motions) that could cut off further expenses. IndyMac lacks standing as a result. *See McConnell,* 540 U.S. at 226 (injury five years in the future "too remote temporally to satisfy Article III standing"); *Lujan,* 504 U.S. at 564 n.2 (injury at some "indefinite future time" insufficient to support standing); *Davis,* 554 U.S. at 734 (injury must be "real, immediate, and direct"); *Berger v. Weinstein,* 2008 WL 3183404, *5 (E.D. Pa. Aug. 6, 2008) (injury was not "certainly impending" where there was no indication when loan at issue would come due), *aff'd,* 348 Fed. Appx. 751 (3d Cir. 2009); *Lamar Advertising of Penn, LLC v. Town of Orchard Park, N.Y.,* 2008 WL 781865, *11 (W.D.N.Y. Feb. 25, 2008) (injury two years in future too remote); *Hakim v. Chertoff,* 447 F. Supp. 2d 325, 328 (S.D.N.Y. 2006) (injury four years in future too remote); *see also Addington v. U.S. Airline Pilots Ass'n,* 606 F.3d 1174, 1180 (9th Cir. 2010) (lawsuit not ripe because the "case presents contingencies that could prevent . . . the injury"), *cert. denied,* 131 S. Ct. 908 (2011).

IndyMac MBS advances several arguments why, despite the foregoing

---

[5] Indeed, IndyMac MBS arguably cannot even rely on this figure for purposes of exhaustion, because any portion of it that IndyMac MBS incurred before tendering the litigation to the carriers is not covered by the policies and therefore does not count toward satisfaction of the retention. *See, e.g.*, *Faust v. The Travelers*, 55 F.3d 471, 473 (9th Cir. 1995) (pre-tender defense expenses not covered).

6

undisputed facts and governing law, it has standing to seek relief under the 2007-2008 policies. None of those arguments withstands scrutiny.

***First***, IndyMac MBS insists that accepting the foregoing argument "would render the Declaratory Judgment Act meaningless" (Resp. at 14), but this assertion is as wrong as it is exaggerated. The Act requires an "actual controversy" that satisfies the elements of Article III standing (*Government Emp. Ins. Co. v. Dizol,* 133 F.3d 1220, 1222-23 (9th Cir. 1988) (en banc)), which as shown above, provide that a threatened harm must be "certainly impending." IndyMac MBS alleges no such harm, and the possibility that it might at some uncertain time in the future exhaust its $2.5 million retention is too remote to confer standing at this juncture. Applying the Act's standing requirements here will not imperil its applicability in the numerous situations where real or impending harms are shown to exist.

***Second***, IndyMac MBS devotes over four pages to discussing cases that address neither the applicable standing rules nor the retention issue. Resp. at 14-18. The one case IndyMac cites as affirmative support for its arguments—*T.H.E. Ins. Co. v. Dowdy's Amusement Park,* 820 F. Supp. 238 (E.D.N.C. 1993)—does ***not***, contrary to its suggestion, address retention exhaustion at all. The case holds only that the fact that a lawsuit has not yet been filed does not *per se* render a declaratory judgment action premature, a holding that says nothing about the issue at hand.

The other cases cited by IndyMac MBS are even farther afield. They supposedly discredit aspects of the determinations under California law in the Ninth Circuit's decision in *Iolab Corp. v. Seaboard Sur. Co.,* 15 F.3d 1500 (9th Cir. 1994), a case that the ABC Defendants cited for the proposition that a declaratory judgment action is not ripe until excess insurance coverage is triggered, even if it is tempting to have a "comprehensive determination of coverage." *Id.* at 1504. The current state of California state law regarding when excess coverage obligations are triggered and when lawsuits regarding them are ripe does not alter the undisputed fact that exhaustion of IndyMac MBS' retention is far from imminent.

*Third*, IndyMac MBS states that it is permitted to allege exhaustion generally (Resp. at 18), but it did not allege ***anything*** in this regard in its Amended Complaint—and certainly cannot do so now given its admission that its defense expenses today total only $500,000. And, as for the two lawsuits filed on June 20, 2011, they likewise do not assist IndyMac MBS' cause for multiple reasons: (1) standing is measured as of "the commencement of the litigation" (*White v. Lee,* 227 F.3d 1214, 1243 (9th Cir. 2000)); (2) the filing of a lawsuit does not indicate when an injury is imminent; (3) IndyMac MBS has yet to claim coverage for these cases under any policy; and (4) the figures cited as the "damage claims" (Resp. at 19), on the face of the complaints, are ***not*** damages sought by the plaintiffs; and (5) even if they were, any request for indemnity would be premature, as no liability determination has been made. *See Western Int'l Syndication Corp. v. Gulf Ins. Co.,* 2004 WL 5573919, *3 (C.D. Cal. Dec. 20, 2004) (Klausner, J.) (indemnity issue not ripe because, "[w]ithout a determination of liability, this Court simply cannot make determinations as to Defendant's duty to indemnify").[6]

Because the retention is not close to exhausted, IndyMac MBS has shown no injury in fact for its request for declaratory relief under the 2007-2008 policies.

### C. IndyMac MBS' Other Arguments Are Baseless.

IndyMac MBS ends with several arguments—presented with little authority or reasoning—designed to delay or prevent dismissal even if this Court concludes that standing is lacking. None of these arguments has merit.

*First*, IndyMac MBS requests leave to amend to address standing (Resp. at 19), but it fails to say how it could cure the defects. Dismissal without leave to amend is appropriate in these circumstances, as the Ninth Circuit held recently in an analogous situation. *See Blomquist v. Washington Mut.,* 384 Fed. Appx. 665, 665-

---

[6] IndyMac MBS' associated reference to the "billions of dollars of transactions" at issue in the other three cases in which it has been sued (Resp. at 18) similarly says nothing about the damages actually in issue, particularly given that those cases involve numerous claims and defendants unrelated to IndyMac MBS. And, of course, there have been no liability findings in those cases either.

8

66, 2010 WL 2545629, *1 (9th Cir. 2010) (in affirming dismissal for failure to allege injury in fact, Court concluded: "The district court did not abuse its discretion by dismissing the claims without leave to amend because Blomquist failed to explain how he could cure the pleading deficiencies"); *see also Burtzos v. Countryside Home Loans,* 2010 WL 2196068, *3 n.2 (S.D. Cal. June 1, 2010) ("Plaintiffs . . . failed to explain how an amended complaint would remedy their lack of standing").

***Second***, IndyMac MBS requests "an opportunity to take discovery to obtain additional jurisdictional facts." Resp. at 20. This request strains credulity as the pleading deficiency arises from **IndyMac MBS' own** lack of a real stake in this controversy. The very Ninth Circuit decision cited for this request emphasizes that "[d]iscovery is necessary . . . only if it is possible that the plaintiff can demonstrate the requisite jurisdictional facts if afforded that opportunity." *St. Clair v. City of Chico,* 880 F.2d 199, 201-02 (9th Cir. 1989). IndyMac MBS cannot do so.

***Finally***, IndyMac MBS argues that if subject matter jurisdiction is lacking over the totality of this lawsuit, it should remanded to state court under 28 U.S.C. § 1447(c).[7] However, under Ninth Circuit authority, dismissal under Rule 12(b)(1) is appropriate if it is an "absolute certainty that remand would be futile." *See Bell v. City of Kellogg,* 922 F.2d 1418, 1424-25 (9th Cir. 1991); *accord Ingrassia v. Chicken Ranch Bingo & Casino,* 676 F. Supp. 2d 953, 961 (E.D. Cal. 2009); *In re Nat'l Sec. Agency Tele. Records Litig.,* 483 F. Supp. 2d 934, 945 (N.D. Cal. 2007); *Pacific Sound Resources v. Burlington N. & Santa Fe Ry. Co.,* 2006 WL 1441983, *1 (W.D. Wash. May 23, 2006), rev'd in part on other grounds,* 286 Fed. Appx. 381 (9th Cir. 2008); *Herman v. Salomon Smith Barney, Inc.,* 266 F. Supp. 2d 1208,

---

[7] To the extent the Amended Complaint can be construed as failing to state a claim—such as its request for declarations under the 2008-2009 policies even though IndyMac MBS has made no claim for coverage under those policies—this Court could treat this motion as one made under Fed. R. Civ. P. 12(b)(6). *See Simmonds v. Credit Suisse Sec. (USA) LLC,* 638 F.3d 1072, 1087 n.6 (9th Cir. 2011). Such a ruling on the merits would avoid any questions regarding § 1447(c).

1213 (S.D. Cal. 2003); *Dale v. IRS,* 2001 WL 721736, *2-3 (E.D. Cal. Apr. 27, 2001); *contra Merrill Cos. LLC v. Keybank Nat'l Ass'n,* 2010 WL 144363, *2 (C.D. Cal. Jan. 7, 2010) (distinguishing *Bell* based on Ninth Circuit cases not addressing futility exception). Here, remand would be futile because California standing law requires a plaintiff to show a personal stake in the outcome of a present and actual controversy, requirements that IndyMac MBS cannot satisfy for the above reasons.[8]

## III.  CONCLUSION

The ABC Defendants request that this Court dismiss this action.

Dated: July 11, 2011           TRESSLER LLP

                               By: /s/ Elizabeth L. Musser
                                   David Simantob
                                   Elizabeth L. Musser
                               Attorney for Those Certain Underwriters At Lloyd's, London and Lexington Ins. Co. UK, Subscribing to Pol. No. QA006807; Those Certain Underwriters At Lloyd's, London and Catlin Ins. Co. (UK) Ltd., Subscribing to Pol. No. QA011608; Twin City Fire Ins. Co.; and Continental Casualty Co.

Dated: July 11, 2011           SEDGWICK LLP

                               By: /s/ Brian D. Harrison
                                   Brian D. Harrison
                               Attorney for Zurich American Ins. Co.

---

[8] *See, e.g., Holmes v. California Nat'l Guard,* 90 Cal. App. 4th 297, 314-15 (Cal. App. 2001) ("standing . . . requires an actual justiciable controversy as to which the complainant has a real interest in the ultimate adjudication because he or she has suffered or is about to suffer an injury of a sufficient magnitude"); *Municipal Court v. Superior Court,* 202 Cal. App. 3d 957, 967 (Cal. App. 1988) ("California courts . . . require a plaintiff to have a personal stake in the outcome of the litigation; the courts have no power to issue advisory opinions"); *Cornelius v. Los Angeles Cty. Auth.,* 49 Cal. App. 4th 1761, 1768 (Cal. App. 1996) ("actual or imminent injury" element "requires a showing that the injury is 'certainly impending'"); *Pacific Legal Found. v. California Coastal Comm'n,* 33 Cal. 3d 158, 171 (Cal. 1982) ("The principle that courts will not entertain an action which is not founded on an actual controversy is a tenet of common law jurisprudence"); *Brownfield v. Daniel Freeman Marina Hosp.,* 208 Cal. App. 3d 405, 410 (Cal. App. 1989) ("actual controversy" requirement for declaratory judgments is not met when "the allegations of the complaint reveal the controversy to be conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion").