1  NOSSAMAN LLP
   THOMAS D. LONG, (SBN 105987)
2  tlong@nossaman.com
   SCOTT N. YAMAGUCHI (SBN 157472)
3  syamaguchi@nossaman.com
   DAVID GRAELER (SBN 197836)
4  dgraeler@nossaman.com
   777 S. Figueroa Street, 34th Floor
5  Los Angeles, California 90017
   Telephone: 213.612.7800
6
   Attorneys for Plaintiff, INDYMAC MBS, Inc,
7  a Delaware corporation

8

9              UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| In re | Case Nos.: CV 11-02950-RGK<br>CV 11-02998-RGK |
| INDYMAC BANCORP, INC., a Delaware corporation, | Adv. Proc. No.: 2:11-cv-02998-RGK |
| Debtor. | **PLAINTIFF INDYMAC MBS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE** |
| INDYMAC MBS, INC., a Delaware corporation,<br>Plaintiff,<br>v.<br>ACE AMERICAN INSURANCE COMPANY, et al.<br>Defendants. | DATE: July 25, 2011 [off-calendar]<br>TIME: 9:00 a.m. [off-calendar]<br>DEPT: 850 (Judge Klausner) |

411862.1_DOC

**PLAINTIFF INDYMAC MBS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE**

By order dated August 25, 2011 (see documents Nos. 114-117, inclusive), the Court granted the motions to dismiss filed by the insurance carrier defendants in this case (which seeks declaratory judgments regarding the parties' rights and obligations under certain insurance policies issued to IndyMac MBS, Inc.), subject to an order to show cause. The order indicates that "Plaintiff is hereby ordered to show cause in writing by September 6, 2011 why the holding in this motion should not be applied to the remaining defendants." Plaintiff ("MBS") hereby responds to the Court's orders. In addition, for the record, MBS takes this opportunity to briefly identify some misstatements in the Court's ruling.

## I. APPLICABILITY OF COURT RULING ON THE SIDE A ONLY INSURERS' MOTION TO DISMISS.

The Court granted the Side A insurance carriers' motion to dismiss on the grounds that plaintiff is not a Side A policyholder and therefore lacks Article III standing. Many of the other defendants are Side A policyholders and accordingly this rationale for granting a motion to dismiss the MBS complaint does not apply to the other defendants, who would have standing as Side A policyholders to assert claims under the Side A policies. Plaintiff MBS does not interpret the Court's ruling as addressing the Article III standing of Side A policyholders.

## II. APPLICABILITY OF RULING ON THE SIDE ABC MOTIONS TO DISMISS.

If the Court dismisses the moving Side ABC carriers, without granting plaintiff leave to amend its complaint, plaintiff MBS does not contend there is any basis for the Court to treat any of the other non-moving defendants differently. If the Court concludes that plaintiff's complaint as alleged, or as it could be amended, fails to state an actual case or controversy against the moving Side ABC carriers, sufficient to meet the federal constitutional requirements for

411862.1_DOC

**PLAINTIFF INDYMAC MBS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE**

seeking declaratory relief before this Court, then the entirety of this action should be dismissed.

## III. THE COURT'S GRANTING OF THE SIDE ABC INSURERS' MOTIONS TO DISMISS IS BASED UPON MISTAKEN ASSUMPTIONS.

The Court granted the Side ABC insurers' motions to dismiss without prejudice for two reasons. First, the Court concluded that "Plaintiff's request for declaratory relief is too remote to constitute a case or controversy under Article III." Second, the Court concluded that plaintiff's claims were too speculative because plaintiff had not yet triggered coverage by exhausting its $2.5 million deductible.

The Court's holdings were premised upon four key assumptions, each of which MBS respectfully believes is mistaken.

First, the Court assumed that "Any eventual insurance coverage that may be owed to Plaintiff under the ABC policies can only be determined after the underlying actions involving the Individual Defendants have been concluded." (Orders of August 24 and 25, 2011 at p. 4.) Insurance coverage actions seeking declaratory relief are frequently brought before the underlying lawsuit has been concluded. See, e.g., *The Flintkote Co. v. General Accident Assur. Co. of Canada*, 410 F.Supp.2d 875 (N.D. Cal. 2006) (coverage action for declaratory relief entertained during pendency of underlying actions). The reasons for allowing coverage actions prior to the underlying lawsuit being determined were perhaps best explained by the Seventh Circuit in *Bankers Trust Company v. Old Republic Insurance Co.*, 959 F.2d 677 (7th Cir. 1992). There, the Court held that an "actual case or controversy" was stated where Bankers Trust sought declaratory relief to establish the validity of an insurance policy issued to a defendant in litigation Bankers Trust was prosecuting but which had not yet concluded. Judge Posner of the Seventh Circuit explained its ruling in favor of

PLAINTIFF INDYMAC MBS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE

allowing Bankers Trust's declaratory relief action to proceed by offering a hypothetical comparison.

> "For suppose the day after [an] accident in which the victim was injured, and therefore long before he could feasibly bring a tort suit, let alone obtain a judgment, the insurer declared the liability insurance policy void; and suppose the insured had no other assets. Then a tort suit would be worthless unless the insured's victim could obtain a declaration that the policy was valid after all. Must the victim go to the expense of prosecuting to judgment a tort suit that would be completely worthless unless the policy is declared valid? Or does not the victim have sufficient interest in the policy to proceed simultaneously, on both fronts, against the insured and insurer, or even against the latter first if less preparation is necessary for that suit?" (*Id.* at 682.)

The claimants in the lawsuits against IndyMac MBS (which since the briefing on these motions have now expanded to a total of at least seven lawsuits) would have a sufficiently ripe case or controversy under *Bankers Trust*. Surely IndyMac MBS as the policyholder responding to their claims also has stated a sufficient case or controversy. The underlying lawsuit need not be resolved in order for an insurance coverage declaratory relief action to be valid.

Second, the Court also assumed that "Plaintiff has not alleged that any of the insurance policies have been improperly exhausted." To the contrary, plaintiff's complaint contains detailed allegations that payments made by the Insurer Defendants were improper, and that such payments should not count towards exhaustion of policy limits. See, e.g., the following allegations in plaintiff's first amended complaint (case no. 11-02950, doc. 1, Exh. 11; case no. 11-02988, doc. 3, Exh. 1):

> "87. The Insurance Carrier Defendants are paying defense fees and costs for one or more of the Individual Insured Defendants. **IndyMac MBS is informed and believes the Insurance Carrier Defendants are also paying defense fees and costs for the Underlying Claims far in excess of what is reasonable and what is covered by the D&O Policies, including hourly rates of as high as $800**

per hour. IndyMac MBS is also informed and believes that the Insurance Carrier Defendants are paying for the defense of claims against the Individual Insured Defendants which can be proven, if at all, only by establishing intentional misconduct for which insurance coverage is prohibited under Section 533 of the California Insurance Code. Such payments impair the coverage potentially available to cover claims against and loss incurred by IndyMac MBS and other insureds.

"92. The D&O Policies are not "duty to defend" insurance policies. The Insurance Carrier Defendants noted that it was "the duty of the insureds and not [the insurers] to defend any claim." A true and correct copy of a letter from counsel representing defendant XL dated August 6, 2008 describing this position is attached hereto as **Exhibit HH**. Instead, the D&O Policies merely provide for the reimbursement of "Loss" which includes defense costs to the extent that those costs arise out of covered "Claims." Accordingly, the Insurance Carrier Defendants specifically reserved their rights with respect to defense costs noting that their payment of defense costs simply constituted an advancement of costs which was subject to an "obligation to repay in event of determination of no coverage under the Policy. . . ." A true and correct copy of correspondence of September 23, 2008 from counsel representing Lloyds outlining the insurance carriers' conditions regarding the advancement of defense costs is attached hereto as **Exhibit II**. IndyMac MBS is informed and believes that the Insurance Carrier Defendants have advanced substantial uncovered defense costs and fees to the Individual Insured Defendants. The Insurance Carrier Defendants are contending that such advancements reduce the limits available to pay other claims under the D&O Policies, including claims under the Side C coverage of the First Tower. IndyMac MBS disputes these contentions. **The amount of any defense costs advanced for uncovered claims and/or for unreasonable defense costs under the Side A coverage must be ascertained in order to determine the amount of potential coverage available for IndyMac MBS. Accordingly, as set forth below, IndyMac MBS seeks declaratory relief as to whether the Insurance Carrier Defendants have advanced uncovered defense costs and fees.**" (First Amended Complaint, ¶ 87 at p. 20, ¶ 92 at pp. 22-23; emphasis added.)

      Third, the Court incorrectly assumed that "whether the second, third and fourth layers of insurance coverage will ever be triggered in the underlying actions is too speculative to give rise to a valid request for standing in the current case." (Orders of August 24 and 25, 2011 at p. 4.) Plaintiff's consolidated opposition to the motions to dismiss revealed that "at least some of the insurers alleged that nearly $30 million out of $80 million [i.e., the first three layers] has already been spent on allegedly appropriate defense costs in the underlying lawsuits, which supposedly reduces the available policy limits to about $50 million (and falling) in the First Tower. . . ." (Consolidated Opposition, at 4:18-21 [case no. 11-02950, doc. 81; case no. 11-02998, doc. 70].) This fact was uncontroverted by the insurers in their reply papers. Plaintiff represents that it can and would allege, if granted leave to amend, that the insurers have sought and obtained bankruptcy court approval to pay amounts in excess of $30 million under the D&O policies for defense and settlement costs (thus triggering the fourth layer). Plaintiff has clearly alleged that improper payments have been made under the insurance policies and can clearly allege that the second, third and fourth layers of insurance coverage have in fact already been triggered in the underlying actions such that the declaratory relief plaintiff is seeking is not speculative.

      Finally, the Court's ruling rests upon a fourth inaccurate assumption that "Plaintiff must first meet its $2,500,000 deductible; plaintiff has not yet met its deductible." Plaintiff concedes that it has not yet met its deductible. However, plaintiff can now allege a total of at least seven lawsuits against it and total expenditures of $800,000 together with defense budgets likely to exceed a cumulative total of $2.5 million in the securities actions in which plaintiff MBS is now a defendant. This, coupled with the Insurer Defendants' payment of about $31 million of expenses which the Insurer Defendants contend (and which

plaintiff MBS denies) purportedly exhausts $31 million out of what the Insurer Defendants contend is one tower only of Side C coverage, with a maximum of less than $50 million remaining available to respond to the defense and indemnity of plaintiff MBS. Quite possibly before plaintiff exhausts its deductible, the Insurer Defendants will, through payments plaintiff contends are inappropriate either because they are not proper payments under the policies or because they should be paid under a subsequent policy year, contend that all coverage available to respond to plaintiff's requests for coverage has been exhausted. Plaintiff should not have to wait for such a circumstance in order to obtain declaratory relief regarding the Insurer Defendants' improper dissipation of policy proceeds, improper payment of uncovered claims and defense costs, and improper allocation of costs to only a single policy year.

If, as the Court suggests, declaratory relief is not available until a policyholder exhausts its deductible, then declaratory relief has no meaningful role independent from a breach of contract claim. Once the deductible is exhausted and an insurer refuses to pay amounts due to a policyholder, there is no need for declaratory relief because breach of contract would be an adequate remedy at law. Yet declaratory relief does exist as an equitable remedy and it is frequently available even in cases prior to exhaustion. See, e.g., *T.H.E. Insurance Co. vs. Dowdy's Amusement Park,* 820 F.Supp. 238 (E.D.N.C. 1993) (coverage action for declaratory relief entertained even before commencement of underlying litigation); *Fremont Reorganizing Corp. v. Federal Ins. Co.,* 2010 WL 444718, *2-3 (C.D. Cal. 2010) (coverage action for declaratory relief entertained without requiring a showing of exhaustion).

If IndyMac Bancorp's bankruptcy trustee Alfred Siegel has standing as a mere claimant or as a policyholder under Side B coverage to prosecute his coverage action pending before this Court, *Siegel v. Certain Underwriters at*

*Lloyds of London, et al.*, United States District Court for the Central District of California, Case No. CV11-02605-RGK, then surely IndyMac MBS also has standing. If the trustee's possible claims for indemnity coverage under Side B of the policies is not too speculative, then neither is plaintiff's claim for coverage under Side C of the policies. If the Side A Only insurers' potential concern about paying out their policy limits, all of which are in excess of $40 million in underlying insurance limits, presents an actual case or controversy sufficient to sustain federal subject matter jurisdiction over their coverage action, *XL Specialty Insurance Co., et al. v. Michael Perry, et al.*, U.S. District Court for the Central District of California, Case No. CV11-02078-GHK (JCGx), where the insurers have implicated fourteen underlying lawsuits in their action as consuming the underlying limits of $40 million, then plaintiff's defense of a total of at least seven underlying lawsuits against it may well exhaust a $2.5 million deductible and should be sufficient to state an actual case or controversy sufficient to invoke federal subject matter jurisdiction and obtain declaratory relief.

In sum, the four assumptions underlying the Court's orders are inaccurate such that the Court should not apply the orders at all and should not dismiss any portion of the case. For this reason MBS also respectfully believes that the holding of the Court's orders should not be applied to the remaining defendants in the case.

DATED: September 6, 2011

NOSSAMAN LLP
THOMAS D. LONG
SCOTT N. YAMAGUCHI
DAVID GRAELER

By: /s/ Scott N. Yamaguchi
    SCOTT N. YAMAGUCHI
Attorneys for Plaintiff, INDYMAC MBS, INC.,
a Delaware Corporation